In re GOOD TIME CHARLIE'S
LTD., Debtor.

GOOD TIME CHARLIE'S LTD.,
Plaintiff,

v.

Benjamin F. BLACK, Samuel Black, Stephen T. Demshock, William R. Wallace, William C. Watson, Jr., Duggan and Marcon, Inc., Posh Construction Co., Inc., Central Plumbing and Heating Co., Inc., Clarence B. Haney Mason Contractors, Inc., West Side Electrical Services, Inc., First Val Properties, Inc., and E.C. Machin, Inc., partners T/A Bethlehem Plaza, Defendant.

Bankruptcy No. 82–04029.
Adv. No. 82–2094.

United States Bankruptcy Court,
E.D. Pennsylvania.

Dec. 7, 1982.

Harry J. Newman, Bethlehem, Pa., for plaintiff.

Richard Brent Somach, Allentown, Pa., for defendant.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

This case is before the Court upon the debtor's request for a preliminary injunction to enjoin the defendant from refusing to provide electrical service to the debtor.[1] The debtor is a debtor in possession in a Chapter 11 bankruptcy proceeding and operates a restaurant as a tenant in the defendant's shopping mall. The defendant is a partnership trading as Bethlehem Plaza which owns and operates the shopping mall known as the Marketplace in Bethlehem, Pennsylvania. Through agreements between the defendant and the Pennsylvania Power and Light Company (hereinafter "PP & L") and between the defendant and its tenants, the defendant provides electri-

---

1. This opinion constitutes the findings of fact and conclusions of law as required by Rule 752 of the Rules of Bankruptcy Procedure.

cal service to all of its tenants, including the debtor. PP & L is the only public utility which provides electrical service to the Bethlehem area.

The debtor filed its Chapter 11 bankruptcy petition on August 26, 1982. On the same date, the debtor filed a complaint for injunctive relief and a motion for a temporary restraining order, thereby seeking to have the defendant enjoined from continuing to refuse to provide electrical service to the debtor. The defendant had terminated electrical service to the debtor on August 19, 1982. On August 26, 1982, the Court entered a temporary restraining order requiring the defendant to resume electrical service to the debtor and requiring the debtor immediately to deposit $1,000.00 with the defendant as security for post-petition electrical service. Pending our decision upon the debtor's request for further injunctive relief, the temporary restraining order has remained in effect, and, on November 23, 1982, we ordered the debtor to deposit an additional $1,000.00 with the defendant as security for post-petition electrical service.

The debtor's claim for injunctive relief is based upon Section 366 of the Bankruptcy Code, 11 U.S.C. § 366, which states:

§ 366. Utility service.

(a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

We agree with the debtor that, under the particular circumstances of this case, the defendant is a "utility" as that term is used in § 366. In the first place, we note that Congress chose to use the term "utility" rather than "public utility" in § 366, thereby indicating to us that an entity other than a public utility could be considered a utility for purposes of § 366.

Secondly, a portion of the legislative history accompanying § 366 states:

"This section is intended to cover utilities that have some special position with respect to the debtor, such as an electric company, gas supplier, or telephone company that is a monopoly in the area so that the debtor cannot easily obtain comparable service from another utility." House Report No. 95–595, 95th Cong., 1st Sess. (1977) 350, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6306.

We feel that the defendant clearly occupies a "special position with respect to the debtor" in its role as the debtor's electricity supplier. Because of PP & L's existence, the defendant does not, strictly speaking, constitute a monopoly as an electricity supplier vis-a-vis the debtor. However, the debtor would be forced to incur a large and very possibly prohibitive expense in the form of rewiring, among other things, if it were required to seek electrical service directly from PP & L. Therefore, we are convinced that the debtor "cannot easily obtain comparable service" from PP & L.

In sum, our reading of § 366 and the accompanying above-quoted legislative history leads us to conclude that the term "utility" includes the defendant under the particular circumstances of this case.

The defendant contends, however, that the fact that it terminated the debtor's electrical service prior to the debtor's filing for bankruptcy precludes the debtor from relief pursuant to § 366. We disagree. We see nothing in § 366 which restricts it to a post-petition interference with utility serv-

ices. On the contrary, the inclusion of the word "refuse" in the statute along with "alter" and "discontinue" compels us to conclude that a pre-petition interference with utility services also comes within the ambit of § 366. Otherwise, the word "refuse" would be superfluous.

The defendant also contends that it did not discontinue and is not now proposing to refuse electrical service to the debtor based solely upon the debtor's prepetition delinquency in payment for electrical service. However, we find unconvincing the defendant's bare assertion that it discontinued electrical service based upon a lease provision allowing it to discontinue electrical service to the debtor upon notice rather than based upon the debtor's delinquency in payment. Even if we were to accept the defendant's assertion in this regard, it would still appear that the debtor's delinquency in payment was the underlying basis for the discontinuance of electrical service.

Therefore, we hold that, under the particular circumstances of this case, the debtor is entitled to injunctive relief pursuant to § 366 and pursuant to Rule 65 of the Federal Rules of Civil Procedure, as incorporated by Rule 765 of the Rules of Bankruptcy Procedure. Absent further Order of the Court, the defendant is enjoined from refusing to supply electrical service to the debtor, provided, pursuant to § 366(b) that the debtor pays to the defendant the charges for post-petition electrical service as they become due in accordance with the provisions of the lease between the parties.